B10 (Official Form 10) (04/13)

| UNITED STATES BANKRUPTCY COURT Northern District Of Ohio | PROOF OF CLAIM |
|---|---|

| Name of Debtor:<br>Theresa Ann Filipovich aka Theresa Ann Liggett | Case Number:<br>14-15886 |
|---|---|

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
U.S. Bank Trust, N.A., as Trustee for LSF9 Master Participation Trust

**COURT USE ONLY**

Name and address where notices should be sent:
Caliber Home Loans, Inc.
13801 Wireless Way
Oklahoma City, OK 73134
Telephone number: (330) 436-0300    email: bknotice@johndclunk.com

☒ Check this box if this claim amends a previously filed claim.

Court Claim Number: 13
     (If known)

Filed on: 1/7/2015

Name and address where payment should be sent (if different from above):
Caliber Home Loans, Inc.
P.O. Box 24330
Oklahoma City, OK 73124
Telephone number: (330) 436-0300    email: bknotice@johndclunk.com

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:** $89,828.86

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☒ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** money loaned
   (See instruction #2)

| 3. Last four digits of any number by which creditor identifies debtor:<br>8086 | 3a. Debtor may have scheduled account as:<br>(See instruction #3a) | 3b. Uniform Claim Identifier (optional):<br>_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _<br>(See instruction #3b) |
|---|---|---|

**4. Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ☒ Real Estate  ☐ Motor Vehicle  ☐ Other
**Describe:** 964 Warwick Drive, Sheffield Lake, OH 44054

**Value of Property:** $79,550.00

**Annual Interest Rate** 6.8 % ☒ Fixed  or  ☐ Variable
(when case was filed)

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:
                                                                                   $10,414.72

**Basis for perfection:** Recording

**Amount of Secured Claim:** $89,828.86

**Amount Unsecured:** $0.00

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(__).

Amount entitled to priority:
$_____

*Amounts are subject to adjustment on 4/01/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**8. Signature:** (See instruction #8)

Check the appropriate box.

☐ I am the creditor.    ☒ I am the creditor's authorized agent.    ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)    ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: LeAnn E. Covey
Title: Attorney for Household Realty Corporation
Company: The Law Offices of John D. Clunk Co., LPA
Address and telephone number (if different from notice address above):
4500 Courthouse Blvd., Suite 400
Stow, OH 44224

/s/ LeAnn E. Covey      03/25/2015
(Signature)      (Date)

Telephone number: (330) 436-0300    email: bknotice@johndclunk.com

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

### Items to be completed in Proof of Claim form

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check the whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest and documents required by FRBP 3001(c) for claims based on an open-end or revolving consumer credit agreement or secured by a security interest in the debtor's principal residence. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

_____DEFINITIONS_____                                                         _____INFORMATION_____

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is a person, corporation, or other entity to whom debtor owes a debt that was incurred before the date of the bankruptcy filing. See 11 U.S.C. §101 (10).

**Claim**
A claim is the creditor's right to receive payment for a debt owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. § 506 (a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien.

A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. § 507 (a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.), and any applicable orders of the bankruptcy court.

AMENDED
# Mortgage Proof of Claim Attachment

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See Bankruptcy Rule 3001(c)(2).

**Name of debtor:** Theresa Ann Filipovich aka Theresa Ann Liggett

**Case number:** 14-15886

**Name of creditor:** U.S. Bank Trust, N.A., as Truste for LSF9 Master Participation Trust

**Last four digits** of any number you use to identify the debtor's account: 8 0 8 6

## Part 1: Statement of Principal and Interest Due as of the Petition Date

Itemize the principal and interest due on the claim as of the petition date (included in the Amount of Claim listed in Item 1 on your Proof of Claim form).

1. **Principal due** — (1) $ 79,342.25

2. **Interest due**

| Interest rate | From mm/dd/yyyy | To mm/dd/yyyy | Amount |
|---|---|---|---|
| 6.8000 % | 11/01/2013 | 09/12/2014 | $ 6,004.49 |
| _____ % | _____ | _____ | $ _____ |
| _____ % | _____ | _____ | + $ _____ |
| Total interest due as of the petition date | | | $ 6,004.49 |

Copy total here ▶ (2) + $ 6,004.49

3. **Total principal and interest due** — (3) $ 85,346.74

## Part 2: Statement of Prepetition Fees, Expenses, and Charges

Itemize the fees, expenses, and charges due on the claim as of the petition date (included in the Amount of Claim listed in the Proof of Claim form).

| Description | Dates incurred | Amount |
|---|---|---|
| 1. **Late charges** | see attached breakdown | (1) $ 1,008.44 |
| 2. **Non-sufficient funds (NSF) fees** | _____ | (2) $ _____ |
| 3. **Attorney's fees** | _____ | (3) $ _____ |
| 4. **Filing fees and court costs** | _____ | (4) $ _____ |
| 5. **Advertisement costs** | _____ | (5) $ _____ |
| 6. **Sheriff/auctioneer fees** | _____ | (6) $ _____ |
| 7. **Title costs** | _____ | (7) $ _____ |
| 8. **Recording fees** | _____ | (8) $ _____ |
| 9. **Appraisal/broker's price opinion fees** | _____ | (9) $ _____ |
| 10. **Property inspection fees** | see attached breakdown | (10) $ 175.00 |
| 11. **Tax advances (non-escrow)** | see attached breakdown | (11) $ 3,298.68 |
| 12. **Insurance advances (non-escrow)** | _____ | (12) $ _____ |
| 13. **Escrow shortage or deficiency** (Do not include amounts that are part of any installment payment listed in Part 3.) | _____ | (13) $ _____ |
| 14. **Property preservation expenses. Specify:**_____ | _____ | (14) $ _____ |
| 15. **Other. Specify:**_____ | _____ | (15) $ _____ |
| 16. **Other. Specify:**_____ | _____ | (16) $ _____ |
| 17. **Other. Specify:**_____ | _____ | (17) + $ _____ |
| 18. **Total prepetition fees, expenses, and charges. Add all of the amounts listed above.** | | (18) $ 4,482.12 |

## Part 3. Statement of Amount Necessary to Cure Default as of the Petition Date

**Does the installment payment amount include an escrow deposit?**

☑ No

☐ Yes    Attach to the Proof of Claim form an escrow account statement prepared as of the petition date in a form consistent with applicable nonbankruptcy law.

| | | | |
|---|---|---|---|
| 1. **Installment payments due** | Date last payment received by creditor | 04/19/2014 | |
| | | mm/dd/yyyy | |
| | Number of installment payments due | (1)    10 | |

| 2. **Amount of installment payments due** | 10 installments @ | $    593.26 | (12/1/2013 - 9/1/2014) |
|---|---|---|---|
| | _____ installments @ | $ _____ | |
| | _____ installments @ | + $ _____ | |
| | **Total installment payments due as of the petition date** | $    5,932.60 | Copy total here ▶  (2) $    5,932.60 |

| 3. **Calculation of cure amount** | **Add** total prepetition fees, expenses, and charges | Copy total from Part 2 here ▶ | + $    4,482.12 |
|---|---|---|---|
| | **Subtract** total of unapplied funds (funds received but not credited to account) | | - $    0.00 |
| | **Subtract** amounts for which debtor is entitled to a refund | | - $    0.00 |
| | **Total amount necessary to cure default as of the petition date** | | (3) $    10,414.72 |

Copy total onto Item 4 of Proof of Claim form

| | |
|---|---|
| Principal Balance | $79,342.25 |
| Accrued Interest | $6,004.49 |
| Late Charges | $1,008.44 |
| Inspections | $175.00 |
| Taxes | $3,298.68 |
| | _____ |
| Total Debt | $89,828.86 |

Payment as of 10/1/2014:  $593.26 (P&I Only)

Breakdown of Late Charges

| | |
|---|---|
| 1/16/2010 | 29.66 |
| 3/16/2010 | 29.66 |
| 5/17/2010 | 29.66 |
| 7/16/2010 | 29.66 |
| 8/16/2010 | 29.66 |
| 9/16/2010 | 29.66 |
| 10/16/2010 | 29.66 |
| 11/16/2010 | 29.66 |
| 12/16/2010 | 29.66 |
| 2/16/2011 | 29.66 |
| 4/16/2011 | 29.66 |
| 5/16/2011 | 29.66 |
| 6/16/2011 | 29.66 |
| 7/16/2011 | 29.66 |
| 8/16/2011 | 29.66 |
| 9/16/2011 | 29.66 |
| 10/17/2011 | 29.66 |
| 11/16/2011 | 29.66 |
| 12/16/2011 | 29.66 |
| 1/16/2012 | 29.66 |
| 2/16/2012 | 29.66 |
| 3/16/2012 | 29.66 |
| 4/16/2012 | 29.66 |
| 5/16/2012 | 29.66 |
| 10/16/2012 | 29.66 |
| 11/16/2012 | 29.66 |
| 12/17/2012 | 29.66 |
| 1/16/2013 | 29.66 |
| 2/16/2013 | 29.66 |
| 3/16/2013 | 29.66 |
| 4/16/2013 | 29.66 |
| 5/16/2013 | 29.66 |
| 6/17/2013 | 29.66 |
| 7/16/2013 | 29.66 |
| 8/16/2013 | 29.66 |
| 9/16/2013 | 29.66 |
| 10/16/2013 | 29.66 |
| | |
| Total Assessed | 1,127.08 |
| Total Credit | (118.64) |
| Total Due | 1,008.44 |

Breakdown of Property Inspections
_____

| 12.50 | completed 9/1/2010 |
| 12.50 | completed 12/8/2010 |
| 12.50 | completed 6/13/2011 |
| 12.50 | completed 8/9/2011 |
| 12.50 | completed 10/5/2011 |
| 12.50 | completed 12/8/2011 |
| 12.50 | completed 1/15/2012 |
| 12.50 | completed 1/11/2014 |
| 12.50 | completed 2/15/2014 |
| 12.50 | completed 3/22/2014 |
| 12.50 | completed 5/9/2014 |
| 12.50 | completed 6/15/2014 |
| 12.50 | completed 7/17/2014 |
| 12.50 | completed 8/23/2014 |

Total Due      175.00

Breakdown of Taxes
_____

1/18/2013          1,481.78

| Amount | Year | Base | P&I |
|--------|------|------|-----|
| 1481.78 | 2011 | 1481.78 | 0.00 |

9/8/2014          1376.60

| Amount | Year | Base | P&I |
|--------|------|------|-----|
| 1376.60 | 2012 | *no breakdown available | |

9/8/2014          666.71

| Amount | Year | Base | P&I |
|--------|------|------|-----|
| 666.71 | 2013 | 606.10 | 60.61 |

760.91

| Amount | Year | Base | P&I |
|--------|------|------|-----|
| 760.91 | 2013 | 606.10 | 154.81 |

Total Taxes Now Due on POC:    3,298.68

## ADDENDUM TO CHAPTER 13 PROOF OF CLAIM
## FOR DEBT SECURED BY A MORTGAGE ON THE DEBTOR'S PRINCIPAL
## RESIDENCE TO BE PAID THROUGH CHAPTER 13 TRUSTEE

Debtor(s) <u>Theresa Ann Filipovich aka Theresa Ann Liggett</u>    Case No: <u>14-15886</u>

Last 4 digits of Loan No.: xxx2977

Current monthly payment amount: $ <u>593.26</u>

<u>$593.26</u>    _____    _____    _____    _____
Principal and Interest                Taxes                      Insurance                 Other 1            Other 2

Explain each category of expenses included in "other": _____

---

**Description of Security for Debt**

Address:        964 Warwick Drive

City:             Sheffield Lake    State: OH    County: Lorain    PP #: 03-00-043-112-040

---

**Creditor Information**

Creditor entitled to enforce the note secured by the mortgage

        Name:  U.S. Bank Trust, N.A., as Trustee for LSF9 Master Participation Trust

        Contact (individual's name and position): LeAnn E. Covey, Attorney for Creditor

        Tele No:  (330)436-0300 ext 2237        Fax No.:  (330)436-0301

        E-mail:  *bknotice@johndclunk.com*

Servicer acting on behalf of creditor

        Name:  Caliber Home Loans

        Contact (individual's name and position): LeAnn E. Covey Attorney for Creditor

        Tele No:  (330)436-0300 ext 2237        Fax No.:  (330)436-0301

        E-mail:  *bknotice@johndclunk.com*

| Attorney | |
|---|---|
| X Servicer | Name:  LeAnn E. Covey  #0083289 |
| X Creditor | Address: 4500 Courthouse Blvd., Ste 400, Stow OH 44224 |
| | Tele No:  (330)436-0300 ext 2237        Fax No.:  (330)436-0301 |
| | E-mail:  *bknotice@johndclunk.com* |

# NOTE

Loan Number ██████████

| JUNE 24 | , 2004 | SHEFFIELD LAKE | , OHIO |
|---|---|---|---|
| [Date] | | [City] | [State] |

964 WARWICK DRIVE, SHEFFIELD LAKE, OHIO 44054

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $91,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **Intervale Mortgage Corporation.** I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **6.80%.**

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1ST day of each month beginning on **AUGUST 1, 2004.** I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **JULY 1, 2034,** I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **815 Reservoir Avenue, Cranston, Rhode Island 02910** or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. **$593.26.**

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of FIFTEEN calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.0 % (or $15.00 **whichever is greater)** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**MULTISTATE FIXED RATE NOTE**--Single Family--Fannie Mae/Freddie Mac MODIFIED INSTRUMENT    Form 3200  1/01

(page 1 of 2 pages)

JAF   TAF

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

THIS LOAN IS MADE PURSUANT TO SECTION 1343 OF THE OHIO REVISED CODE AND AS PRE-EMPTED BY PUBLIC LAWS 96-221 AND 97-320. THE TERMS OF THIS LOAN ARE NOT SUBJECT TO ANY PROVISIONS OF THE OHIO MORTGAGE LOAN ACT.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Theresa A Filipovich_     (Seal)
THERESA A FILIPOVICH     -Borrower

_Judith A Filipovich_     (Seal)
JUDITH A FILIPOVICH     -Borrower

_____ (Seal)
    -Borrower

*[Sign Original Only]*

PAY TO THE ORDER OF
DECISION ONE MORTGAGE COMPANY, LLC LTD
WITHOUT RECOURSE
SERVICE MORTGAGE CORP LLC LTD
DECISION ONE MORTGAGE COMPANY LLC LTD
For Interim Mortgage Corp.
Aubra Lutmer
Asst. Secretary
SEAL

Without Recourse
For valuable consideration
Decision One Mortgage Company LLC LTD
hereby assigns all rights, title and interest to
Decision One Mortgage Company LLC LTD
SEAL

DONALD HORN
POST CLOSING SPECIALIST

MULTISTATE FIXED RATE NOTE--Single Family--Fannie Mae/Freddie Mac MODIFIED INSTRUMENT   Form 3200 1/01
*(page 2 of 2 pages)*



Loan Number

## PREPAYMENT RIDER TO NOTE

THIS PREPAYMENT RIDER is made this _____ 24TH _____ day of _____ JUNE _____ , 2004 ,
and is incorporated into and shall be deemed to amend and supplement the Note of the same date given by
the undersigned (the "Borrower") in favor of **Intervale Mortgage Corporation** (the "Lender").

### 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of
principal only is known as a "prepayment". When I make a prepayment, I will tell the Note Holder in
writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the
monthly payments due under the Note.

I may make a partial prepayment without paying any prepayment charge. If I make a full prepayment
within one (1) year of the date of this Note, I agree to pay a prepayment charge of 5% of the original
principal amount of the loan; if I make a full prepayment more than one (1) year but within two (2) years
of the date of this Note, I agree to pay a prepayment charge of 5% of the original principal amount of the
loan; if I make a full prepayment more than two (2) years but within three (3) years of the date of this
Note, I agree to pay a prepayment charge of 5% of the original principal amount of the loan. The Note
Holder will use my prepayments to reduce the amount of principal that I owe under this Note. However,
the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount,
before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial
prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the
Note Holder agrees in writing to those changes.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this
Prepayment Rider.

_Theresa A. Filipovich_ (Seal)
**THERESA A FILIPOVICH** -Borrower

_Judith A Filipovich_ (Seal)
**JUDITH A FILIPOVICH** -Borrower

_____ (Seal)
-Borrower

OHIO PREPAYMENT RIDER - FIXED RATE, FIRST MORTGAGE

012194#2098

After Recording Return To:

Decision One Mortgage Company, LLC
Servicing Agent for Intervale Mortgage Corporation
6060 J.A. Jones Drive, Suite 800
Charlotte, North Carolina 28287

————— [Space Above This Line For Recording Data] —————

Loan Number
MIN:

# MORTGAGE

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **JUNE 24, 2004**, together with all Riders to this document.

**(B) "Borrower"** is **THERESA A FILIPOVICH, UNMARRIED AND JUDITH A FILIPOVICH, UNMARRIED.** Borrower is the mortgagor under this Security Instrument.

**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(D) "Lender"** is **Intervale Mortgage Corporation.** Lender is a **CORPORATION** organized and existing under the laws of **RHODE ISLAND.** Lender's address is **815 RESERVOIR AVENUE, CRANSTON, RHODE ISLAND 02910.**

**(E) "Note"** means the promissory note signed by Borrower and dated **JUNE 24, 2004**. The Note states that Borrower owes Lender **NINETY-ONE THOUSAND AND 00/100ths** Dollars (U.S.**$91,000.00**) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **JULY 1, 2034**.

**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**OHIO**--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3036 1/01  *(page 1 of 13 pages)*

jAF    TAF

14-15886-aih 14-05886-aih Claim 10-2 Filed 09/27/21 Entered 09/27/21 04:08:31 Page 12 of 31

AMERICA'S CHOICE TITLE AGENCY INC
4096 HOLIDAY ST. N.W.
CANTON, OHIO 44718
ACTA #
Mail
Eof
UNOFFICIAL

(G) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider     ☐ Condominium Rider     ☐ Second Home Rider

☐ Balloon Rider     ☐ Planned Unit Development Rider     ☐ Other(s) [specify]

☐ 1-4 Family Rider     ☐ Biweekly Payment Rider

(I) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) **"Escrow Items"** means those items that are described in Section 3.

(M) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in the **County** of **LORAIN** :     [Type of Recording Jurisdiction]
[Name of Recording Jurisdiction]

**SEE ATTACHED SCHEDULE "A"**

SAMPLE ONLY

**OHIO**--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3036 1/01 *(page 2 of 13 pages)*

which currently has the address of  **964 WARWICK DRIVE**

[Street]

**SHEFFIELD LAKE**_____, Ohio  **44054**_____ ("Property Address"):

[City]                                   [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds.

**OHIO**--Single Family--Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**          Form 3036  1/01  *(page 3 of 13 pages)*

JAF   TAF

Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow

**OHIO**--Single Family--Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**       Form 3036 1/01  *(page 4 of 13 pages)*

JAF TAF

account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

**OHIO**--Single Family--Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**          Form 3036  1/01  *(page 5 of 13 pages)*

JAF   JAF

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**OHIO**--Single Family--Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**      Form 3036  1/01  *(page 6 of 13 pages)*

JAF  TAF

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

**OHIO**--Single Family--Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**     Form 3036  1/01  *(page 7 of 13 pages)*

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

**OHIO**--Single Family--Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**　　　　Form 3036  1/01  *(page 8 of 13 pages)*

JAF　　TAF

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

**OHIO**--Single Family--Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**          Form 3036  1/01  *(page 9 of 13 pages)*

JAF

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**OHIO**--Single Family--Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**    Form 3036  1/01  *(page 10 of 13 pages)*

JAF    TAF

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

**OHIO**--Single Family--**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**          Form 3036  1/01  *(page 11 of 13 pages)*

JAF   TAF

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, costs of title evidence.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Certain Other Advances.** In addition to any other sum secured hereby, this Security Instrument shall also secure the unpaid principal balance of, plus accrued interest on, any amount of money loaned, advanced or paid by Lender to or for the account and benefit of Borrower, after this Security Instrument is delivered to and filed with the Recorder's Office, LORAIN County, Ohio, for recording. Lender may make such advances in order to pay any real estate taxes and assessments, insurance premiums plus all other costs and expenses incurred in connection with the operation, protection or preservation of the Property, including to cure Borrower's defaults by making any such payments which Borrower should have paid as provided in this Security Instrument, it being intended by this Section 24 to acknowledge, affirm and comply with the provision of § 5301.233 of the Revised Code of Ohio.

**OHIO**--Single Family--Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**          Form 3036  1/01  *(page 12 of 13 pages)*

JAF   TAF

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Executed this _24th_ day of _____JUNE 2004_____.

*Theresa A. Filipovich* (Seal)
**THERESA A FILIPOVICH** -Borrower

*Judith A Filipovich* (Seal)
**JUDITH A FILIPOVICH** -Borrower

_____ (Seal)       _____ (Seal)
-Borrower                                            -Borrower

—————————— **[Space Below This Line For Acknowledgment]** ——————————

State of OHIO
County of LORAIN
   The foregoing instrument was acknowledged before me this _____ by THERESA
**A FILIPOVICH, UNMARRIED AND JUDITH A FILIPOVICH, UNMARRIED** .

(Seal)

Notary Public
Typed or printed name: *Christopher Zimmerman*

CHRISTOPHER ZIMMERMAN
Notary Public, State of Ohio
My Commission Expires Feb. 27, 2008

This instrument prepared by:
INTERVALE MORTGAGE CORPORATION
6200 OAK TREE BLVD, SUITE 260
INDEPENDENCE, OHIO 44131

**OHIO**--Single Family--**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**    Form 3036 1/01 *(page 13 of 13 pages)*

UNOFFICIAL

## SCHEDULE A
### LEGAL DESCRIPTION

File Number 

SITUATED IN THE CITY OF SHEFFIELD LAKE, COUNTY OF LORAIN AND STATE OF OHIO:

AND KNOWN AS BEING SUBLOT NO. 81 IN COLONIAL GARDENS ALLOTMENT OF PART OF ORIGINAL SHEFFIELD TOWNSHIP LOTS NO. 30 AND 43, AS SHOWN BY THE RECORDED PLAT IN VOLUME 14 OF MAPS, PAGE 16 OF LORAIN COUNTY RECORDS. SAID SUBLOT NO. 81 HAS A FRONTAGE OF 50 FEET ON THE WESTERLY SIDE OF WARWICK DRIVE, AND EXTENDS BACK BETWEEN PARALLEL LINES 135.48 FEET AS APPEARS BY SAID PLAT, BE THE SAME MORE OR LESS, BUT SUBJECT TO ALL LEGAL HIGHWAYS.

AKA: 964 WARWICK DRIVE, SHEFFIELD LAKE, OHIO, 44054

PARCEL NUMBER: 03-00-043-112-040



UNOFFICIAL

JUDITH M. NEDWICK
LORAIN COUNTY
RECORDER

2004 JUN 29 A 10: 16

RECEIVED FOR RECORD

J A F

END OF LEGAL DESCRIPTION



Doc ID: 018340490002 Type: OFF
Kind: ASSIGNMENT
Recorded: 10/02/2014 at 10:26:18 AM
Fee Amt: $32.00 Page 1 of 2
Lorain County, Ohio
Judith M Nedwick County Recorder
File 2014-0520901

Recording Requested By: HSBC MORTGAGE SERVICES
When Recorded Return To: ASSIGNMENTS, HSBC MORTGAGE SERVICES P.O. BOX 1422, BRANDON, FL 33509

## CORPORATE ASSIGNMENT OF MORTGAGE

Lorain, Ohio
**SELLER'S SERVICING #** ██████FILIPOVICH"

**MIN #:** ████████ **SIS #: 1-888-679-6377**

Date of Assignment: September 29th, 2014
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR INTERVALE MORTGAGE CORPORATION "ITS SUCCESSORS AND ASSIGNS" at P.O. BOX 2026, FLINT, MI 48501-2026
Assignee: HOUSEHOLD REALTY CORPORATION at 636 GRAND REGENCY BLVD., BRANDON, FL 33510

Executed By: THERESA A FILIPOVICH, UNMARRIED AND JUDITH A FILIPOVICH, UNMARRIED
To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR INTERVALE MORTGAGE CORPORATION "ITS SUCCESSORS AND ASSIGNS"
Date of Mortgage: 06/24/2004 Recorded: 06/29/2004 in Book/Reel/Liber: N/A Page/Folio: N/A as Instrument No.: 2004-0012194 In the County of Lorain, State of Ohio.

Property Address: 964 WARWICK DRIVE, SHEFFIELD, OH 44054

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage having an original principal sum of $91,000.00 with interest, secured thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the terms contained in said Mortgage.

IN WITNESS WHEREOF, the undersigned, by the officer duly authorized, has duly executed the foregoing instrument.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR INTERVALE MORTGAGE CORPORATION "ITS SUCCESSORS AND ASSIGNS"
On September 29th, 2014

By: _____
JILL KINSELL, Assistant Secretary

CORPORATE ASSIGNMENT OF MORTGAGE Page 2 of 2

STATE OF Florida
COUNTY OF Hillsborough

On September 29th, 2014, before me, HILDALYN GONZALEZ ROSADO, a Notary Public in and for
Hillsborough in the State of Florida, personally appeared JILL KINSELL, Assistant Secretary,
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s)
whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity, and that by his/her/their signature on the
instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the
instrument.

WITNESS my hand and official seal,

HILDALYN GONZALEZ ROSADO
Notary Expires: 03/05/2017 #EE880812



(This area for notarial seal)

Prepared By: Jill Kinsell, HSBC MORTGAGE SERVICES 636 GRAND REGENCY BLVD, BRANDON,
FL 33510 1-866-801-6180

HSBC CONSUMER AND MORTGAGE
LENDING
PO BOX 1422
BRANDON, FL 33509-9900

RECORDING REQUESTED BY AND WHEN RECORDED RETURN TO:
CALIBER HOME LOANS
13801 Wireless Way
Oklahoma City, OK 73134

| Prepared By: | Jessica.Martinez | | Loan Number: | ▮▮▮▮▮ |
| MERS Min: | ▮▮▮▮▮ | | | |
| Parcel ID:: | 03-00-043-112-040 | | | |

*14-14571(B)*

Space Above This Line For Recorder's Use

## ASSIGNMENT OF MORTGAGE/DEED OF TRUST

FOR VALUE RECEIVED, the undersigned **HOUSEHOLD REALTY CORPORATION** whose address is **636 GRAND REGENCY BLVD., BRANDON, FL 33510**, hereby grants, assigns and transfers to **U.S. BANK TRUST, N.A., AS TRUSTEE FOR LSF9 MASTER PARTICIPATION TRUST** whose address is **13801 WIRELESS WAY, OKLAHOMA CITY, OK 73134** all beneficial interest under that certain mortgage/Deed of Trust/Security Deed dated **06/24/2004** executed by **THERESA A FILIPOVICH and JUDITH A FILIPOVICH** to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC., AS NOMINEE FOR INTERVALE MORTGAGE CORPORATION, ITS SUCCESSORS AND ASSIGNS** in the amount of **$91,000.00** and recorded on **6/29/2004** as Instrument # **2004-0012194**, in Book/Volume or Liber No. -- , Page/folio --- of Official Records in the County Recorder's office of **LORAIN** County, OH, describing land herein as: **'SEE ATTACHED 'EXHIBIT A'**

Property Address:     **964 WARWICK DRIVE, SHEFFIELD LAKE OH 44054**

TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said mortgage/Deed of Trust/Security Deed.

**HOUSEHOLD REALTY CORPORATION BY CALIBER HOME LOANS INC., AS ITS ATTORNEY IN FACT**

Witness #1     *Erin Naylor*

Witness #2     *Daniel McClelland*

| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |
|---|

By: _Theodore Schroeder Jr. a/k/a Ted Schroeder_

Title: _Authorized Signatory_

County of San Diego )
State of California )

On _____ _____, _____ before me, _____, Notary Public, personally appeared, _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand official seal,

_____
Notary Name: _____         My Commission Expires: _____

# ACKNOWLEDGMENT

A Notary Public or other officer completing this certificate verifies only the identity of the individual who signed the document, to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of _San Diego_____ )


On ___February 19, 2015_____ before me, _____SASHA CANDELARIA, Notary Public_____
(insert name and title of the officer)

personally appeared __THEODORE SCHROEDER JR AKA TED SCHROEDER_____,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.


WITNESS my hand and official seal.

> **SASHA CANDELARIA**
> Commission # 2057753
> Notary Public - California
> San Diego County
> My Comm. Expires Feb 13, 2018

Signature_____     **(Seal)**

## EXHIBIT A

File Number   01-20287

SITUATED IN THE CITY OF SHEFFIELD LAKE, COUNTY OF LORAIN AND STATE OF OHIO:

AND KNOWN AS BEING SUBLOT NO. 81 IN COLONIAL GARDENS ALLOTMENT OF PART OF ORIGINAL SHEFFIELD TOWNSHIP LOTS NO. 30 AND 43, AS SHOWN BY THE RECORDED PLAT IN VOLUME 14 OF MAPS, PAGE 16 OF LORAIN COUNTY RECORDS. SAID SUBLOT NO. 81 HAS A FRONTAGE OF 50 FEET ON THE WESTERLY SIDE OF WARWICK DRIVE, AND EXTENDS BACK BETWEEN PARALLEL LINES 135.48 FEET AS APPEARS BY SAID PLAT, BE THE SAME MORE OR LESS, BUT SUBJECT TO ALL LEGAL HIGHWAYS.

AKA: 964 WARWICK DRIVE, SHEFFIELD LAKE, OHIO, 44054

PARCEL NUMBER: 03-00-043-112-040



Craig Snodgrass, CPA, CGFM
Lorain County Auditor
Lorain County Admin. Building
226 Middle Ave., 2nd Floor
Elyria, OH 44035
Phone: (440) 329-5207

## Owner Information

| | |
|---|---|
| Parcel Number | 03-00-043-112-040 |
| Owner Name & Address | FILIPOVICH JUDITH A & THERESA A |
| Tax Bill Mailed to | FILIPOVICH JUDITH  A |
| | 964 WARWICK DR  SHEFFIELD LAKE, OH 44054 |

## Property Information

| | |
|---|---|
| Location Address | 964   WARWICK DR |
| | SHEFFIELD LAKE, OH 44054 |
| Property Description | OL 43 50 X 135 S/L 81 |
| Tax District | 64 - SHEFFIELD LAKE / SHEFFIELD-SHEFFIELD LAKE CSD |
| Land Use | 510 - SINGLE FAM DW PLAT LOT |
| Neighborhood | 35100 - SHEFFIELD LAKE - WESTSIDE |
| Acres | 0.0000 |
| Instrument Number | 290030915808 |

## Value Information:

| | |
|---|---|
| Market Land Value | $19,080 |
| Market Building Value | $60,470 |
| Market Total Value | $79,550 |
| Market CAUV | $0 |
| Assessed Land Value | $6,680 |
| Assessed Building Value | $21,160 |
| Assessed Total Value | $27,840 |
| Assessed CAUV | $0 |

## Residential Information, Structure #675465

| | |
|---|---|
| Year Built | 1953 |
| Finished Sqft | 1154 |
| Total Rooms (excludes bathrooms) | 5 |
| Bedrooms | 3 |
| Full Bath | 1 |
| Half Bath | 0 |
| Fireplace | No |
| Basement, Crawl Space, Slab | See Sketch |
| Central AC | Yes |

## 2013 Full Year Tax Information

| | |
|---|---|
| Full Year Tax Before Adjustments | $2,796.30 |
| -State Credit | $778.30 |
| Subtotal | $2,018.00 |
| -Non-business Credit | $200.14 |
| -Owner Occupancy Credit | $50.04 |
| -Homestead Credit | $555.62 |
| Annual Real Estate Tax | $1,212.20 |
| Current Special Assessments | $0.00 |
| Delinquent Special Assessments | $0.00 |
| Unpaid Taxes | $1,376.60 |
| Full Year Tax (includes any unpaid taxes & special assessments) | $2,804.22 |
| Total Taxes Paid to Date | $0.00 |
| Special Assessments (YES/NO) | NO |

03-00-043-112-040 - Page 1       9/22/2014 2:41:35 PM

14-15886-aih 14-15886-aih  Doc 889-1  Doc 68-2  FILED 09/27/14  FILED 12/09/14  ENTERED 09/27/14 06:06:31  ENTERED 12/09/14 06:06:31  Page 31 of 31  Page 31 of 31